## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 29 2016, 6:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tyler Matthew McAfee, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 29, 2016 <br><br> Court of Appeals Case No. 45A03-1602-CR-431 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Salvador Vasquez, Judge <br><br> Trial Court Cause No. 45G01-1503-MR-1 |

**Pyle, Judge.**

## Statement of the Case

Tyler Matthew McAfee ("McAfee") appeals his sentence imposed following his guilty plea to Level 5 felony reckless homicide[1] and Level 6 felony criminal recklessness.[2] The trial court sentenced McAfee to five years for his Level 5 felony reckless homicide conviction and one and one-half years for his Level 6 felony criminal recklessness conviction, and it ordered that the two sentences be served consecutively. McAfee now appeals his sentence, arguing that his aggregate six and one-half year sentence is inappropriate. Concluding that McAfee has failed to show that his sentence is inappropriate, we affirm his sentence.

Affirmed.

## Issue

Whether McAfee's sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

## Facts

On March 3, 2015, McAfee stabbed and killed Alton Bradley ("Bradley") and stabbed and injured Matthew Smolek ("Smolek"). The facts of McAfee's crimes are set out in the following stipulated factual basis, to which McAfee and the State agreed when he pled guilty:

---

[1] IND. CODE § 35-42-1-5.

[2] I.C. § 35-42-2-2.

3. That on March 3, 2015, TYLER MATTHEW MCAFEE was driving a vehicle with three passengers in the area of 142nd Avenue and Lauerman Road in Cedar Lake, Lake County, Indiana.

4. Throughout the time that TYLER MATTHEW MCAFEE was driving the vehicle on that date, TYLER MATTHEW MCAFEE had possession of a stainless steel, double edged knife that measured approximately ten (10) inches in length with a blade that was approximately five and a half (5½) inches in length and a handle that was wrapped in black electrician's tape.

5. On said date and said location, victims Alton Bradley (deceased) and Matthew Smolek were walking in the roadway when there was a two-car vehicle crash involving cars driven by TYLER MATTHEW MCAFEE and Dakota Young.

6. Matthew Smolek broke a passenger side window of the car TYLER MATTHEW MCAFEE was driving by using his flashlight.

7. All of the passengers of TYLER MATTHEW MCAFEE'S car fled the scene.

8. Following the car accident, there was a verbal altercation that escalated into a physical altercation.

9. At a point in the tumult, TYLER MATTHEW MCAFEE grabbed the knife in [his] driver's door compartment.

10. A physical struggle ensued in the road in the area of the accident that involved TYLER MATTHEW MCAFEE and Matthew Smolek with other individuals in the immediate area who were unknown to TYLER MATTHEW MCAFEE.

11. A neutral third party looked out the window and saw a group of five or six people physically interacting in the street.

12. Alton Bradley was one of those people, and at some point, he made a quick movement to intervene, causing him to come close to TYLER MATTHEW MCAFEE.

13. Around this time, TYLER MATTHEW MCAFEE was swinging the knife in a wild, uncontrolled fashion, and stabbed both Matthew Smolek and Alton Bradley.

14. Alton Bradley suffered three stab wounds, one to the chest under the right clavicle which penetrated the lung and brachiocephalic artery, a second superficial wound of the back, in the upper thoracic spine area, and a third superficial wound to the posterior left shoulder.

15. Matthew Smolek suffered two stab wounds, one under the left arm and one on the left side of his chest.

16. As a result of the single puncture wound to his chest, Alton Bradley died.

17. Matthew Smolek suffered serious injury, including a deep laceration requiring stitches.

(App. 84-85).

[4] The State initially charged McAfee with murder and Level 3 felony aggravated battery. The State later filed an amended charging information, adding counts of Level 2 felony voluntary manslaughter; Level 5 felony involuntary manslaughter; Level 5 felony reckless homicide; and Level 6 felony criminal recklessness.

[5] Thereafter, in November 2015, McAfee entered into a written plea agreement, in which he agreed to plead guilty to Level 5 felony reckless homicide and Level 6 felony criminal recklessness in exchange for the State's dismissal of the

remaining four charges.  The parties agreed that sentencing would be open to the trial court's discretion.  The parties also agreed to the stipulated factual basis, as set forth above.  During the guilty plea hearing, McAfee pled guilty to the Level 5 felony reckless homicide and Level 6 felony criminal recklessness charges, and the trial court took the pleas under advisement.

[6]     Prior to sentencing, the trial court received multiple support letters from McAfee's family and numerous letters from Bradley's family and friends.  On the day of the January 26, 2016 sentencing hearing, McAfee filed a sentencing memorandum in which he attached post-crime excerpts of Facebook comments from Bradley's family and friends that he contended "indicate[d] there was much more to the situation than police reports had disclosed and newspapers [had] reported."  (App. 91).  McAfee also discussed the nature of his offenses and suggested that he had acted in self-defense.  He claimed that the car in front of him "slammed on its brakes directly in front of [him,]" causing him to hit the other car.  (App. 93).  He also asserted that "[t]here [wa]s not one iota of evidence that indicate[d] that [he] in any way acted aggressively toward any individual" until after Smolek broke his car window and after the altercation with the other individuals.  (App. 98).  McAfee also attached an affidavit from a person who witnessed part of the events of the crimes.  McAfee asked the trial court to consider certain mitigating factors, including his guilty plea, his acceptance of responsibility, and the fact that he had "acted under strong provocation."  (App. 96).  He also argued that his prior felony offense should not be considered as an aggravating factor because it was "completely unrelated

to the nature and circumstances of the event resulting in [McAfee's] pleas of guilt in this case." (App. 97). McAfee requested that the trial court sentence him to concurrent advisory terms for each felony (or an aggregate sentence of three years) and to suspend all but the time he had already served in pretrial incarceration and place him on probation.

[7] During the sentencing hearing, both parties presented evidence, including witnesses and exhibits, that focused on the facts surrounding the nature of the offenses and the facts leading up to the night of the crimes. For example, the State questioned McAfee's claim that the vehicle in front of McAfee's vehicle intentionally stopped and caused him to hit the other vehicle. After McAfee's father made reference to McAfee acting in self-defense and asserted that there was no evidence regarding his son's intent, the trial court had McAfee's counsel clarify that McAfee understood that he was waiving a claim of self-defense by pleading guilty. Additionally, the State introduced copies of files from McAfee's cell phone, which included: (1) texts messages, which were sent the evening before the crimes, stating that he and three others were "[b]outta f*** up half of [C]edar [L]ake[;]" and (2) a "selfie" photograph, which was taken on the morning of the crimes, of McAfee holding up the knife used in the crimes. (State's Sent. Ex. 1 at 7); (Tr. 79).

[8] When sentencing McAfee, the trial court explained that it would determine "an appropriate sentence given the nature and circumstances of the event that occurred and the character of the defendant, [which were] two broad factors

that [it] would consider for any particular sentence." (Tr. 114). The trial court, when addressing the nature of the case, stated:

> I believe it's quite clear that the contact, the accident or the incident that took place when these cars collide[d] or something occurred was not happenstance. You being in Cedar Lake, I think it's quite clear, is not just [you] happen to be driving around . . . What I do gather here is that this is no happenstance encounter. You were there for a particular purpose in my guesstimate is that that particular purpose has something to do with the occupants in one or both cars that were involved here.

(Tr. 112-13). The trial court acknowledged that Smolek had broken McAfee's car window, but it also pointed out that McAfee had been carrying a knife that he ultimately used and that resulted in the death of seventeen-year-old Bradley and serious injury to Smolek. The trial court stated that while McAfee's actions may have had "unintended consequences, all this was preventable[.]" (Tr. 117).

[9] When discussing McAfee's character and aggravating circumstances, the trial court gave significant weight to his criminal history. The trial court pointed out that McAfee, who was nineteen years old when he committed the current offenses, had been convicted of Class D felony theft just two years prior. The trial court noted that McAfee had pled guilty to the theft charge in exchange for the dismissal of a Class B felony robbery resulting in bodily injury charge. The trial court also noted that, although McAfee had this one conviction only, it "would never ignore that because of the short gap in time from the time [McAfee] w[as] eventually released from that case to the time [he] kill[ed]

somebody." (Tr. 116). The trial court stated that it had shown McAfee "great leniency in allowing that robbery to go do[w]n[] to a theft" and "[f]urther leniency by allowing [him] to serve that out . . . at home." (Tr. 116). The trial court found that the leniency shown to McAfee had "absolutely no deterrent effect" on him and his "future criminal conduct[,]" and it determined that this was an aggravating circumstance. (Tr. 116). In regard to mitigating circumstances, the trial court recognized McAfee's guilty plea and his admission of responsibility as such.

[10]  The trial court imposed a five (5) year sentence for McAfee's Level 5 felony reckless homicide conviction and a one and one-half (1½) year sentence for his Level 6 felony criminal recklessness conviction. Additionally, the trial court, noting that McAfee's actions involved two separate victims, ordered that these sentences be served consecutively in the Department of Correction. McAfee now appeals.

## Decision

[11]  McAfee contends that his aggregate six and one-half year sentence for his Level 5 felony reckless homicide and Level 6 felony criminal recklessness convictions is inappropriate. He requests this Court to reduce both of his sentences to the advisory terms and to order that they be served concurrently, resulting in an "aggregate sentence of three years, with a portion to be served on probation." (McAfee's Br. 10).

[12] We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Id.* at 1224.

[13] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Here, McAfee pled guilty to Level 5 felony reckless homicide and Level 6 felony criminal recklessness. A Level 5 felony has a range of one (1) to six (6) years with an advisory sentence of three (3) years. I.C. § 35-50-2-6(b). A Level 6 felony has a range of six (6) months to two and one-half (2½) years with an advisory sentence of one (1) year. I.C. § 35-50-2-7(b). The trial court imposed a five (5) year sentence for McAfee's Level 5 felony reckless homicide conviction and a one and one-half (1½) year sentence for his Level 6 felony criminal recklessness conviction. Due to the existence of two separate victims, the trial court ordered that the two sentences be served consecutively.

[14]     The nature of McAfee's offenses involved him waving a knife at individuals that resulted in the death of one young man and serious injury to another. McAfee acknowledges that his offenses resulted in "a tragedy for all those involved and their families." (McAfee's Br. 7). Nevertheless, he seems to minimize the nature of the offense and contends that his aggregate sentence is inappropriate because Smolek, Bradley, and the individuals in the other car "instigated the confrontation with [him.]" (McAfee's Br. 7). He suggests that he committed his reckless homicide and criminal recklessness offenses because "[w]hat began as an automobile collision when the car in front of [him] suddenly came to a stop, quickly escalated to a violent confrontation when Smolek bashed McAfee's car windows in with a flashlight" and five individuals "physically attacked him." (McAfee's Br. 7, 8). The trial court, however, considered these asserted facts when sentencing McAfee, and it recognized McAfee's role and actions that resulted in Bradley's death and Smolek's injury.

[15]     Turning to McAfee's character, we—as did the trial court—acknowledge that McAfee accepted responsibility and pled guilty. McAfee contends that his character should be reviewed favorably because he had support from family and a job. While that is commendable, we note that the trial court took his family support into consideration, recognizing that "[s]upport [wa]s a big deal because certainly support is something [McAfee] w[ould] need when [he is] eventually out of incarceration." (Tr. 112). The trial court also recognized that "many times . . . notwithstanding that support, people still continue to screw up." (Tr. 112).

[16] McAfee also contends that his criminal history "should not hold great aggravating weight in evaluation of his character" because it was "unrelated to the current offenses." (McAfee's Br. 10). We disagree. First, to the extent that McAfee appears to be challenging the weight the trial court gave to his criminal history, such an argument is not subject to appellate review. *See Anglemeyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007) (holding that the relative weight or value assignable to aggravating circumstances is not subject to review for abuse of discretion), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). Moreover, the trial court explained why it considered McAfee's prior conviction to be a significant aggravating circumstance and a negative reflection of his character. Specifically, the trial court explained that it had shown "great leniency" with his prior conviction and sentence, yet McAfee had disregarded that chance and, less than two years later, had ended up killing a person. (Tr. 116). The trial court stated that McAfee "ha[d] no business being back here again" and that his prior sentence was the trial court's "effort to try to rehabilitate [him]." (Tr. 118). Aside from this disregard for the law and failure to reform, the presentence investigation report also reveals that McAfee has a history of daily marijuana use from the time he was fifteen years old until just prior to his arrest.

[17] Lastly, McAfee asserts—without analysis—that his crimes were "essentially a single episode of criminal conduct" and should have been ordered to be served concurrently. (McAfee's Br. 9). Because McAfee makes no cogent argument to support this assertion, he has waived appellate review of the argument. *See* Ind.

Appellate Rule 46(A)(8)(a). Waiver notwithstanding, the presence of multiple victims is an aggravating circumstance that justifies the imposition of consecutive sentences. *See Cardwell v. State,* 895 N.E.2d 1219, 1225 (Ind. 2008) (explaining that "[w]hether the counts involve one or multiple victims is highly relevant to the decision to impose consecutive sentences"). Accordingly, we reject his assertion that the trial court's imposition of consecutive sentences was inappropriate.

[18] McAfee has not persuaded us that his aggregate six and one-half year sentence for his Level 5 felony reckless homicide and Level 6 felony criminal recklessness convictions is inappropriate. Therefore, we affirm the trial court's sentence.

[19] Affirmed.

Bradford, J., and Altice, J., concur.